UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ECLIPSE SPORTSWIRE,

    Plaintiff,

v.                                                     Case No. 8:22-cv-1433-KKM-NHA

THE SPORTS MALL, LLC,
d/b/a SPORTSCOLLECTIBLES.COM,

    Defendant.
_____

## ORDER

Eclipse Sportswire alleges that The Sports Mall, LLC, sells sports memorabilia on its website depicting Eclipse's copyrighted photographs without authorization. Sports Mall moves for summary judgment on the basis that Eclipse lacks standing to bring a copyright claim and that Sports Mall is otherwise not liable for copyright infringement. Def.'s MSJ (Doc. 61). Eclipse moves for partial summary judgment as to liability and willfulness. Pl.'s MSJ (Doc. 62). Because Eclipse lacks statutory standing under the Copyright Act to bring this action, I grant Sports Mall's motion for summary judgment and deny Eclipse's motion for summary judgment.

I.  UNDISPUTED FACTS

Eclipse is a Maryland-based company that provides "editorial photographic coverage for sporting events all over the world with a focus on horse racing, equestrian events, and golf." Am. Compl. (Doc. 25) ¶¶ 1, 6. Alex Evers is a photographer who is represented by Eclipse. *Id.* ¶ 8.

In February 2012, Eclipse and Evers entered into a "Contributing Photographer's Agreement." Joint Statement of Facts (JSOF) (Doc. 60) ¶ 38; *see also* Photographer's Agreement (Doc. 69-1). Evers and Eclipse also signed an amendment in November 2015 that amended Section 1.3 of the Agreement. JSOF ¶ 39; *see also* Agreement Amendment (Doc. 60-2). The Photographer's Agreement memorialized Evers's decision to appoint Eclipse "a perpetual non-exclusive worldwide wire service representation with respect to the commercial sale, licensing of photographic images . . . which are submitted [by Evers] and accepted by [Eclipse]." Photographer's Agreement at § 1.1. Specifically, the Amendment states:

> [Evers] herein agrees to jointly hold the copyright of submitted images with [Eclipse] and its agents. This jointly held copyright interest specifically allows [Eclipse]the right to unilaterally pursue any and all violations of copyright including the decision to accept a settlement offer or to pursue litigation. This jointly held copyright interest expressly allows to [Evers] a right to grant limited licenses for use or sale of images without the express consent of [Eclipse], such that the licensed use or sale is not in competition with the ongoing business of [Eclipse]. Outside of issues regarding to

2

violations of copyright, [Evers] is not surrendering any ownership rights relative to submitted images.

Agreement Amendment § 1.3.

At issue in this case are four of Evers's photographs, all of which he registered with the Register of Copyrights and none of which he took while employed by Eclipse. JSOF ¶¶ 3–4, 7, 9, 12, 15, 19–20, 22, 25. As a result, Evers "created and owns all copyrights in the" four photographs, referred to as "the Work." *Id.* ¶ 5–6.

In 2015, Eclipse provided the first of Evers's photographs "a stock agency named Cal Sports Media" for redistribution to others. *Id.* ¶ 40. And from 2016 to 2018, Eclipse provided all four photographs to stock agency Getty Images for redistribution. *Id.* ¶ 42. Eclipse does not know whether Cal Sports Media or Getty Images distributed any copies of the Work. *Id.* ¶¶ 41, 43. And two companies, America's Best Racing and Horse Racing Nation, each downloaded copies of the two of the relevant photographs from Eclipse's website. *Id.* ¶¶ 44, 46. Eclipse is also unaware of whether either company distributed any copies of those photographs. *Id.* ¶¶ 45, 47.

Sports Mall "operates an online store that sells authentic sports memorabilia and sport collectibles." *Id.* ¶ 27. Sports Mall offered for sale autographed posters and giclée prints that allegedly depicted the Work. *Id.* ¶¶ 29–33, 49. Each photograph comprising the Work "embodies copyrightable subject matter." *Id.* ¶ 35. The parties dispute whether the copies or derivates of the Work were authorized. *Id.* ¶¶ 49–50; Pl.'s MSJ at 14–17.

3

Sports Mall did not create the copies or derivatives of the Work that it attempted to sell on its platform. JSOF ¶ 50. Nor did Sports Mall have any of the copies or derivatives in its actual possession. *Id.* ¶ 52. Instead, Sports Mall included photographs of posters depicting the copies or derivatives of the first two of Evers's photographs that were created by a third party on its own website "for the purpose of seeking a buyer" for the autographed posters. *Id.* ¶¶ 56–58. And Sports Mall "in-line linked and framed on its . . . website" photos of the autographed giclée prints it "found on eBay" that depicted the other two photographs. *Id.* ¶¶ 59–60. If Sports Mall secured a buyer, it would then presumably purchase the autographed poster or giclée print from the individual or entity Sports Mall obtained the copy of the Work from. *Cf. id.* ¶¶ 50, 54.

Following these events, Eclipse sued Sports Mall, asserting a single count for copyright infringement regarding all four photographs. Am. Compl. ¶¶ 38–53. Both parties move for summary judgment. Sports Mall requests that summary judgment be entered in full. Def.'s MSJ at 1–3. Eclipse moves for partial summary judgment be entered in its favor as to liability and willfulness. Pl.'s MSJ at 1.

## II.   LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact

4

is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. See *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there is a genuine issue of material fact which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court reviews the record evidence as identified by the parties and draws all legitimate inferences in the nonmoving party's favor. See *Sconiers*, 946 F.3d at 1262; *Reese v. Hebert*, 527 F.3d 1253, 1268 (11th Cir. 2008). "[W]hen the question before the district court is purely a question of law," summary judgment may be appropriately granted. *Blanco v. Samuel*, 91 F.4th 1061, 1070 (11th Cir. 2024). "The interpretation of a contract, or agreement, presents a question of law, as does the determination of whether a contract is ambiguous." *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011) (citation omitted).

## III.  ANALYSIS

Sports Mall contends that it is entitled to summary judgment for numerous reasons. As a threshold matter, Sports Mall argues that Eclipse lacks standing to assert a cause of action for copyright infringement because Eclipse "did not receive from Mr. Evers, by transfer or license, any exclusive right under the copyrights in the Work at issue." Def.'s MSJ at 2, 4–12. Sports Mall also argues that it is entitled to summary judgment because it did not create any of the allegedly infringing works nor did it ever own or possess any of the allegedly infringing works. *Id.* at 2, 14. Further, Sports Mall contends that Eclipse "has no evidence [that] any of the allegedly infringing works are actually unauthorized copies." *Id.* Next, Sports Mall asserts that "use of a photo of an autographed photo to advertise the autographed photo for sale is a fair use permitted under the Copyright Act." *Id.* at 2, 18–19. And finally, Sports Mall argues that its in-line linking and framing of the allegedly infringing work is not copyright infringement because the photographs reside on eBay's server and are displayed on eBay's website rather than its own. *Id.* at 3, 19–24.

Eclipse contests each of Sports Mall's arguments. *See* Pl.'s Resp. to Def.'s MSJ (Doc. 63). And for its part, Eclipse requests that partial summary judgment be entered in its favor on the issues of liability and willfulness. Pl.'s MSJ at 1. If I find that Sports Mall's conduct was willful, Eclipse requests that I enter summary judgment in full and award damages to Eclipse. *Id.* at 22 n.12.

6

Eclipse lacks statutory standing to assert this copyright infringement action because neither the Photographer's Agreement nor the Agreement Amendment transferred to Eclipse an exclusive right in the Work's copyrights. Accordingly, I grant summary judgment on this basis and do not reach the parties' other arguments.

### A. The Copyright Act Requires a Party to Have Statutory Standing to Assert a Claim for Infringement

The Copyright Act of 1976 limits who has statutory standing to sue for infringement to "[t]he legal or beneficial owner of an exclusive right under a copyright." 17 U.S.C. § 501(b); *see also Saregama India v. Mosley,* 635 F.3d 1284, 1290–91 (11th Cir. 2011) ("[O]nly the legal or beneficial owner of an 'exclusive right' has standing to bring a copyright infringement action in a United States court."); *Smith v. Casey*, 741 F.3d 1236, 1241 (11th Cir. 2014) (explaining that only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right"). The Copyright Act also identifies the six rights with respect to a copyright that are protected by the statute: to reproduce the work; to prepare derivative works based upon the work; to distribute copies of the work; to perform the work publicly; to display the work publicly; and to record and perform the work by means of an audio transmission. 17 U.S.C. § 106.

There are three primary ways to acquire ownership of a protected right under the Copyright Act. Ordinarily, ownership accrues to the author. *See* 17 U.S.C. § 201(a). But

7

when an employee prepares a work within the scope of his employment, the employer is the owner. *See id.* § 201(b). Finally, the author of a work may transfer ownership of the copyright to another. *See id.* § 201(d). But any transfer of ownership must be in writing and signed. *See id.* § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."). And an "assignment of [a] nonexclusive license[]" is excluded "from the definition of 'transfer of copyright ownership' under 17 U.S.C. § 101." *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 752 (11th Cir. 1997). Thus, granting an entity a nonexclusive license to take any action listed in § 106, such as the right to display or distribute copyrighted work, does not amount to a transfer in ownership of the copyright. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 956 (11th Cir. 2009) (explaining that unlike an exclusive license, "there is no transfer of ownership" with a nonexclusive license).

If Eclipse is not the "legal or beneficial owner of an exclusive right" identified by the Copyright Act, it lacks statutory standing to pursue this infringement action. There is no dispute that Eclipse did not acquire ownership of the Work's copyrights through authorship. *See* JSOF ¶¶ 7, 12, 17, 22 (stating that Evers took each of the four photographs). Nor is it disputed that Eclipse did not acquire ownership of the Work's copyrights as the employer of Evers. Evers took the four photographs "under an [Eclipse]

8

credential" but he was not an employee of Eclipse, nor did he take the photos on a "photography assignment" for Eclipse. *See* Evers Decl. (Doc. 62-4) at 8 (stating that all four Photographs "were taken under an [Eclipse] credential"); Serio Tr. (Doc. 62-3, Ex. C) at 32:4–6, 37:7–12 (same); Evers Tr. (Doc. 62-3, Ex. D) at 21:2–4 (same); *see also* Serio Tr. 19:23-20:11 (stating that Evers was an independent contractor and thus the copyright for his photographs remain with him, even when taken with Eclipse credential). Accordingly, the only way that Eclipse could have obtained ownership in the Work's copyrights was through transfer.

Thus, the question is whether the Photographer's Agreement and Agreement Amendment transferred to Eclipse an exclusive right recognized by the Copyright Act in the Work's copyrights. Neither did.

### B. The Photographer's Agreement and the Agreement Amendment Did Not Give Eclipse an Exclusive Right in the Work's Copyrights

Sports Mall argues that the Photographer's Agreement does not transfer to Eclipse any *exclusive* right in the Work's copyrights. Def.'s Resp. to Pl.'s MSJ (Doc. 64) at 5–7. Sports Mall contends that the express language of the Agreement Amendment acknowledges Evers's retained all exclusive copyright interests in the Work. Def.'s MSJ at 11; Def.'s Resp. to Pl.'s MSJ at 5–6. Eclipse, on the other hand, argues that reading the Photographer's Agreement in its entirety and employing canons of construction to

9

reconcile any inconsistency, the agreement "confers an exclusive licensing right to [Eclipse] with respect to" the Work. Pl.'s Resp. to Def.'s MSJ at 3; *see also id.* at 2–5.[1]

I agree with Sports Mall that the Photographer's Agreement and Agreement Amendment do not grant Eclipse an exclusive right protected by Section 106 of the Copyright Act in the Work's copyright for two reasons.

### 1. The Joint Right to Sue Transferred by the Agreement Amendment Provides No Exclusive Right Enforceable under the Copyright Act

Assigning an individual or entity the "right to sue" for violations of copyright alone does not vest that individual or entity with an exclusive right in the specific copyright for the purposes of standing under the Copyright Act. *See Pro. LED Lighting, Ltd. V. AAdyn Tech., LLC*, 88 F. Supp. 3d 1356, 1369 (S.D. Fla. 2015). Instead, an entity or individual must be "the legal or beneficial owner of an 'exclusive right' " identified by the Copyright Act to have standing to use. *See Saregama*, 635 F.3d at 1290–91 (citing 17 U.S.C.

---

[1] Consistent with the Photographer's Agreement's choice of law provision, Maryland law governs the interpretation of the Photographer's Agreement and the Agreement Amendment. Photographer's Agreement § 15.3. *See Am. Fam. Life Assurance Co. of Columbus, Ga. v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989) (the forum state's choice-of-law rules determine what state's substantive law applies); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2005) (per curiam) (Florida enforces choice-of-law provisions absent contravening public policy); *accord Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000). Under Maryland law, the clear language of a contract is the best evidence of the parties' intent, and therefore "[a] contract's unambiguous language will not give way to what the parties thought the contract meant or intended it to mean at the time of execution." *Sy–Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 546 (Md. 2003). To be sure, "[i]f a written contract is susceptible of a clear, unambiguous and definite understanding . . . its construction is for the court to determine." *Wells v. Chevy Chase Bank, F.S.B.*, 768 A.2d 620, 630 (Md. 2001) (citation and quotations omitted) (ellipses in original).

§ 501(b)). Put differently, the right to sue for infringement—without the exclusive ownership of the underlying copyright interest attempting to be vindicated—is insufficient to confer standing under the Copyright Act. *See, e.g.*, *AAdyn Tech*, 88 F. Supp. 3d at 1369 ("[A] mere right to sue is not an exclusive right under a copyright, and is insufficient to bring an infringement action."); *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 884–90 (9th Cir. 2005) (en banc) (holding that an assignee of an accrued claim for copyright infringement may not sue for infringement under § 501(b) unless the assignee also receives the exclusive copyright interest listed in § 106); *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 410 (2d Cir. 2018) (concluding that a photographer's assignment to stock photo agency of the right to sue did not confer standing under the Copyright Act). Therefore, conveying the right to sue without conveying an identified exclusive copyright interest amounts to transferring no enforceable right at all. *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) ("The Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf.").

Here, Evers conveyed Eclipse the right to sue, but no additional exclusive right. The Agreement Amendment contains a section titled "Ownership of Images." Agreement Amendment § 1.3. That section defines the "jointly held" interest in the Work: "This jointly held copyright interest specifically allows [Eclipse] the right to unilaterally pursue

11

any and all violations of copyright including the decision to accept a settlement offer or to pursue litigation." *Id.* That section also provides that the "copyright interest expressly allows [Evers] a right to grant limited licenses for use or sale of images without the express consent of [Eclipse], such that the licensed use or sale is not in competition with the ongoing business of [Eclipse]." *Id.* Immediately following this carve-out, the section clarifies that, "[o]utside of issues regarding to violations of copyright, [Evers] is not surrendering any ownership rights relative to submitted images." *Id.* Thus, the plain language of Section 1.3 of the Agreement Amendment makes clear that the only interest granted to Eclipse in the Agreement Amendment is the right to sue. And that right to sue was not even exclusive to Eclipse, but held jointly with Evers.

Accordingly, assigning Eclipse the right to sue was not sufficient to vest Eclipse with a right under the Copyright Act because it was unaccompanied by a transfer of an exclusive copyright right under § 106.

### 2. Evers Never Transferred an Exclusive Licensing Right to Eclipse

No other provision of the Photographer's Agreement or the Agreement Amendment conveyed Eclipse an exclusive copyright interest in the Work—specifically an exclusive licensing right. Eclipse argues that Section 1.1 and Section 1.2 of the Photographer's Agreement, when read together, grant Eclipse "exclusive licensing rights" in Evers's photographs. Pl.'s Resp. to Def.'s MSJ at 4–5; Pl's MSJ at 7–11. Eclipse is

mistaken in its interpretation of the contract language. A review of the Photographer's Agreement and Agreement Amendment reveals that Eclipse was granted a limited license to display and distribute the Work, but that license was not exclusive and thus did not convey an exclusive interest in the Work's copyright.

First, Eclipse argues that Section 1.2's specific language regarding Evers's limited ability to grant other entities a license to his photographs controls over Section 1.1's more general language that provides Eclipse "a perpetual non-exclusive license." Pl.'s Resp. to Def.'s MSJ at 5. In Eclipse's view, Evers's agreement in Section 1.2 not to submit the photographs to "any other stock agency" if Evers already submitted them to Eclipse created an exclusive license and thus overrides Section 1.1's provision specifying that Evers granted Eclipse only a non-exclusive license. *Id.* at 4–5. I disagree. Section 1.1 and Section 1.2 are not incongruent nor does a plain reading of these provisions confer an exclusive licensing right to Eclipse.

Section 1.1 of the Photographer's Agreement states that Evers "appoints a perpetual non-exclusive worldwide wire service representation with respect to the commercial sale, licensing of photographic images created by [Evers] (the "Images") which are submitted to and accepted by [Eclipse]." Put differently, the Agreement permitted Evers to submit photographs to Eclipse, and if Eclipse accepted those photographs, it would host those photographs on its website for others to view and download. The Agreement also specifies

13

that if Evers submits photographs to Eclipse, and Eclipse accepts those photographs, Evers agreed not to submit the same photographs to "any other stock photo agency." *Id.* § 1.2.

Additionally, the Section 1.2.1 of the Photographer's Agreement contemplates that if Evers shoots any photograph under an Eclipse credential, he is not permitted to submit that photograph to another "stock agency or wire service." *Id.* § 1.2.1. This language does not amount to an exclusive license, nor does it vest Eclipse with copyright to the photographs taken with an Eclipse credential. *See* Serio Tr. 19:23-20:11 (stating that copyright to photographs taken under an eclipse credential, as contemplated in Section 1.2.1, remain with Evers). Instead, it is a limited non-exclusive license to display Evers's photographs. Evers is not bound to let *only* Eclipse display his photographs; instead, he can "grant limited licenses for use or sale of" his images to anyone not in competition with Eclipse and he does not need Eclipse's permission to do so. *See* Agreement Amendment § 1.3. This language is more specific than the general provisions of Section 1.1 and Section 1.2. Therefore, even if these provisions are conflicting, Section 1.3 would govern. *See SVAP II Pasadena Crossroads LLC v. Fitness Int'l LLC*, 306 A.3d 748, 757 (Md. 2023) ("[W]hen a general provision seemingly conflicts with a specific provision, we will give effect to the specific provision." (citation and quotations omitted)). Further, interpreting Section 1.1 and 1.2 to convey Eclipse only a nonexclusive license is in harmony with Section 1.3 that provides that Evers "is not surrendering any ownership rights relative to

submitted images" because assigning an entity "a nonexclusive license" does not amount to a "transfer of ownership" in the copyright. *See Wilchombe*, 555 F.3d at 956.

Second, Eclipse's contention that the Photographer's Agreement granted it an *exclusive* licensing right in the photographs Evers submitted and Eclipse accepted essentially renders two other provisions of the agreement meaningless or superfluous. Sports Mall's interpretation, on the other hand, gives effect to the text of the entire agreement as a whole and does not render any provision meaningless. *See Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 73 A.3d 224, 232–33 (Md. 2013) ("[T]he principles of contract interpretation require that in ascertaining the true meaning of a contract, the contract must be construed in its entirety, and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing.") (cleaned up).

Section 6 specifies that if Evers agrees to complete a photography assignment on behalf of Eclipse, all rights, including copyright, to photographs Evers takes as part of the assignment are owned by Eclipse. Photographer's Agreement § 6. If Eclipse's reading of the Agreement is correct, and it owns exclusive license and copyright in Evers's photographs submitted to Eclipse, then there would be no need for Section 6 to specify that Evers transfers and assigns all copyright material in all photographs he takes on assignment for Eclipse.

15

There is no dispute that Evers did not shoot the Work on a photography assignment on behalf of Eclipse. *See* Serio Tr. at 32:4–20; 37:10–12. Instead, the Work was taken under an Eclipse credential. *See* Evers Decl. (stating that all four Photographs "were taken under an [Eclipse] credential"); Serio Tr. at 32:4–6, 37:7–12 (same); Evers Tr. at 21:2–4 (same).

Additionally, if Eclipse's interpretation was correct, Section 1.3's provision that Evers "is not surrendering any ownership rights relative to the submitted images" would be meaningless except for the right to sue for infringement. Agreement Amendment § 1.3. Eclipse's reading of the Photographer's Agreement fails to account for all the terms of the agreement.

Third, even if there was doubt about the meaning of the Photographer's Agreement as amended by the Agreement Amendment, any such ambiguity may be construed against the drafter, Eclipse. *Credible Behav. Health, Inc. v. Johnson*, 220 A.3d 303, 314 (2019) ("[A] contract will be "most strongly construed against" its drafter when a court finds the contractual terms at issue to be ambiguous." (citation and quotations omitted)). Eclipse is the sophisticated commercial party that drafted the contract who has clearly shown it knows how to amend the contract to better protect its rights. *Compare* Photographer's Agreement § 1.3 ("All Images submitted to [Eclipse], including copyright thereto, shall remain the property of [Evers] except that all rights, including copyright, for Images

16

created on assignment for Eclipse . . . [as specified in] paragraph 6 . . . ."), *with* Agreement Amendment (amending Section 1.3 to putatively grant Eclipse the right to sue for copyright infringement). Moreover, interpreting the Photographer's Agreement to mean more than the plain language prescribes would deprive Evers of the benefit of his bargain that he made when negotiating both the initial Photographer's Agreement and the Agreement Amendment. Further, nothing prevents Eclipse from amending the Photographer's Agreement a second time to cure the above deficiencies.

\*\*\*

In sum, the only potential exclusive "right" Eclipse was granted under the Photographer's Agreement is the right to sue for infringement on Evers's behalf. But the mere right to sue, unaccompanied by an exclusive right in the copyright, is insufficient to create standing to sue for infringement under the Copyright Act because the right to sue itself is not an exclusive right of a copyright. *See* 17 U.S.C. §§ 106, 501(b). Accordingly, Eclipse lacks statutory standing and this case is dismissed with prejudice as to Eclipse suing Sports Mall under the current version of the Photographer's Agreement for copyright infringement as to the Work. *See Smith*, 741 F.3d at 1240–41 (treating whether a plaintiff has the right to sue for copyright infringement as a statutory, not constitutional, standing inquiry); *see also HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 381 (7th Cir. 2011) (affirming dismissal with prejudice in copyright infringement case when plaintiff lacked

17

statutory standing); *see, e.g.*, *AAdyn Tech*, 88 F. Supp. 3d at 1371, 1377 (dismissing copyright infringement count with prejudice for lack of statutory standing).

## II. CONCLUSION

Because Eclipse lacks statutory standing to assert a claim against Sports Mall, I grant summary judgment in Sport Mall's favor. Accordingly, the following is **ORDERED:**

1. Sports Mall's (Doc. 61) Motion for Summary Judgment is **GRANTED**. This case is **DISMISSED WITH PREJUDICE** because Eclipse lacks statutory standing to sue under the Copyright Act in the light of the current Photographer's Agreement and Agreement Amendment.

2. Eclipse's (Doc. 62) Motion for Partial Summary Judgment as to Liability and Willfulness is **DENIED** as moot.

3. The Clerk is directed to enter **JUDGMENT** in favor of The Sports Mall, LLC and against Eclipse Sportswire.

2. The Clerk is directed to terminate any pending motions and deadlines, and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on March 14, 2024.

Kathryn Kimball Mizelle
United States District Judge